May it please the Court, and good morning. The District Court concluded that Section 1623, the Federal Immigration Statute, preempts Texas Education Code Section 54.051D. We of course will get into, I hope, an extensive discussion of preemption, but that's kind of a term of art, so setting the word preemption aside for just a minute, isn't it true that Texas provides illegal aliens with a benefit that the federal law says shouldn't occur? Whether or not that's technically preemption, they're in conflict, are they not? I think we should assume that that is true for purposes of this argument. But the Court did not preempt, to use that technical term, 54.052, which is the Texas statute that gives undocumented aliens in-state tuition. The Court's ruling is a product of YCT's litigation stance in which it says it does not challenge or seek to enjoin the provisions of Texas law making aliens eligible for in-state tuition. So I think a central question here is whether the text of the immigration statute, which is all about denying benefits to undocumented aliens, affirmatively compels a Texas university to give out-of-state citizens in-state tuition, and we contend that the text does no such thing. Well, it doesn't, but if Texas has made the decision to afford in-state tuition to illegal aliens who are residents, then the federal law says you've got to do the same thing for non-resident citizens. Yeah, section— I mean, that's what the district court found, right? Section 1623 does, Your Honor, make it hard for an undocumented alien to receive in-state tuition rates. That was its plain purpose, and I agree. It says that an undocumented alien, quote, shall not be eligible for in-state tuition unless a citizen is eligible for in-state is to restrict eligibility. It says no eligibility unless. It ties the state's hands. Indeed, it is codified in a chapter of the federal immigration code entitled Restricting Welfare and Public Benefits for Aliens. So this is where I think the district court went wrong. I understand what the court was thinking, but the district court viewed section 1623 as a congressional mandate requiring the state to confer a benefit on a separate class of persons. In the court's view, section 23 says, and I'm quoting from the court's opinion, if a university provides in-state tuition to an undocumented alien, then it must also provide in-state tuition to an out-of-state citizen. Indeed, the court wrote that section 1623 requires preferential treatment for a U.S. citizen. Now, the only way we contend that could be true is if the immigration statute itself, through its text, compels Texas to expand eligibility beyond what the legislature has enacted. But nowhere in section 1623 has Congress given the tuition benefit or any other educational benefit for out-of-state students. So Texas can go on and continue violating federal law as long as somebody doesn't challenge the actual provision that grants illegal aliens in-state tuition if they're residents. I do think someone must challenge that alien eligibility. But didn't the district court grapple with all the statutory scheme? I mean, it found that the actual statute that set the out-of-state tuition rate was it dealt with the broader scheme. In other words, it notes and addresses in the district court's order that Texas has decided to give in-state tuition benefits to illegals. So the court did talk about the entire scheme, but what it didn't do is address alien ineligibility. And I think the reason why... The Texas legislature addressed that, and they said, we're going to make them eligible. But no one has challenged that. But the district court says, okay, that's fine. But as that the court found preempted can't set a differential rate of out-of-state tuition for non-resident citizens. Your Honor, I just think it would be unusual for a court to undertake an answer to a question that is not presented in the case. Well, so I guess that's maybe the underlying question. The Young Conservatives of Texas could have either challenged the section giving illegals that are residents in-state tuition, or couldn't they have proceeded the ones paying the out-of-state tuition? If they could find in the statute some mandate that Congress made to the state that requires them to give out-of-state students in-state tuition. But how does 1623 not say that when Texas has provided in-state tuition for the very people? The first condition of that statute is met, right? So how does the unless not kick in? Because there's no congressional, the way that the statute is written is in terms of a prohibition. 1623 says, an alien who is not lawfully present shall not be eligible on the basis of residence for any post-secondary education benefit. That is a prohibition. It is not anywhere in that text a mandate the way the district court viewed it. And so what we have here is the absence of a challenge to the alien ineligibility. In fact, they disclaimed specifically many times that we're not challenging this. And so what Congress did, and here's where I think YCT gets it right, okay? This part I think is important for the courts to consider. YCT says section 23 prohibits a state from at the same time giving aliens in-state tuition while denying non-resident U.S. citizens that same benefit. And I think that is true as far as it goes. In the event a state provides for both alien eligibility and citizen ineligibility in violation of 1623, then Congress declared which one must go, and that is alien eligibility. It didn't go further and say what the state must do is provide, compelling a state to upend its entire tuition policy and provide in-state tuition to out-of-state students. And we think that is what Day versus Bond got right in the Tenth Circuit. We think that is what Arizona versus Maricopa County understood, and that is in a state in which, in that case it was DACA recipients, in a state in which they are not eligible for in-state tuition, even if it would be good policy, they are not entitled to in-state tuition. But no text in this statute confers a new benefit. This would be a completely new benefit on out-of-state students. And there's no language that Congress intended to force a state to forgo out-of-state tuition revenue streams. Instead, it requires a state to retract an education benefit to aliens when it is also not given to non-resident citizens. Congress could have done that, but it did not. That's correct. I think that is my position. And there's a real question whether the Education Code 54.052 violates 1623. I think this wasn't briefed in this case because the YCT didn't argue this. But I could imagine arguments not made here because that wasn't the issue, that alien in-state tuition is not preempted. If you look at the amicus brief for the Texas Business Leadership Council, and I think it's at pages 9 through 10, it has a laundry list of circumstances where out-of-state students have many ways in which to qualify for in-state tuition without regard to residence. And I was sort of overwhelmed by looking at that list. People from certain states are entitled to in-state tuition. People who are from military backgrounds and their dependents are entitled to in-state tuition. If you have a family member who is an employee of the University of Texas or Texas A&M in some circumstances, you get in-state tuition. If you are a nurse seeking a license in Texas, in-state tuition. If you're an Olympic athlete, you can get in-state tuition without regard to residency. So there are all kinds of ways in which that is possible. But I think it is wrong to spend a lot of time on that subject. I can't imagine that it would be a part of an opinion of this and the district court wrongly held that Congress intended to compel states to extend in-state tuition to out-of-state citizens through the mechanism of 1623. I wanted to talk a little bit about the injunction. And I would like to argue that even if we assume, and let's do this for a section 54.052, which is the alien eligibility statute, even though this was not argued, I would like to say that other forms of relief would be much narrower than a federal takeover of the state's tuition policy. As an example, the district court in a proper case, in a proper case, could eliminate the residency qualification for in-state tuition, leaving the high school graduation requirement alone. Or it could consider denying altogether in-state tuition to illegal aliens. A template for that kind of decision is the Arizona Supreme Court's decision in Arizona v. Maricopa County Community College. And there the court noted that 1623 permits a to out-of-state citizens. And Arizona did not meet that condition. In fact, there was a referendum that said aliens should not be entitled to claim residency status, those DACA recipients. Therefore, the court concluded that undocumented aliens are not eligible for in-state tuition. And the Supreme Court affirmed an injunction barring that practice. The Texas law is different, as Judge Wilson pointed out. This is one where the legislature found, for whatever reason, for whatever public policy benefit that they thought existed, that aliens should be entitled to in-state tuition if they can establish residency. But the plaintiffs here have not asked the court to enjoin alien in-state tuition. They've affirmatively disclaimed it. They've affirmatively disclaimed it. We will, of course, ask them about that. Right. And I think that in a proper case, this could be done. In fact, the same immigration statute at 8 U.S.C. Section 1103A1 says the Secretary of Homeland Security shall be charged with the administration and enforcement of all laws relating to immigration of aliens. And so the Secretary could bring an action if they believe that 052 is being violated by the state of Texas. Or the template that I mentioned, you could imagine Texas doing the same thing as the Arizona Attorney General did, bringing an action saying alien eligibility is wrong and it can't coexist with 1623. But again, that did not occur here. So the sweeping injunction that the district court handed down has no valid roots in the statute's text, and it is fundamental error that should be corrected. And finally, I just wanted to speak a moment about the idea that the YCT could somehow replead. Judge Smith, you're right. They disclaimed the avenue. They're the master of their complaints. And there's a real question of whether they would have standing to assert, like the Secretary of Immigration could, the ineligibility of aliens for benefits. Oh, I think they would have standing, would they not? I mean, to the extent that the out-of-state tuition they pay is higher because a whole class of students who are paying in-state tuition really should be paying out-of-state tuition. So, Judge, I think that anomaly is very true. That may not be the case we're talking about, but I mean, I think it certainly is another ground for standing. I think it's a very anomalous situation to have both things coexist. But I think under Day v. Bond, if the court agrees with the reasoning, they would not bring that action. They don't have standing to bring that action. That's not been briefed in this case, the ability of somebody from out-of-state to argue about the propriety of an immigration statute. But Day v. Bond says no. And FOSS, the Arizona Court of Appeals decision, says no along the same lines. So we think that wouldn't be appropriate here either. So for those reasons, I'll reserve the balance of my time, but we think that the district court got it wrong. Yes, you've saved time for about a thank you. Thank you, Your Honors. Thank you. Judge Weldon? Good morning, Your Honors. May it please this court. The parties agree in this case that Section 1623 prohibits states from doing two things at the same time. We just heard opposing counsel say, we both agree, that Texas law requires that universities do both of these things at the same time. The district court therefore rightly held that the federal law and state law are in conflict, and the state law is therefore unconstitutional. This case is not about the merits of that dispute. The dispute here is whether or not there is any legal mechanism available for my clients to resolve this ongoing violation of federal law that costs them $12,000 per semester. Now, the government's arguments in this case come down to really, for the most part, everything we've heard today, a question about how to read the text of Section 1623. And that's really a question about remedies. They argue that the only remedy available under Section 1623 is the removal of in-state tuition from unlawfully present aliens. The problem with that argument is that it's found nowhere in the text of Section 1623. Section 1623 does not contain an explicit limitation of remedy section. Instead, they imply it from the fact that Congress chose to phrase Section 1623 as a not unless conditional as opposed to an if-then conditional. Now, the problem with that argument is that, as we point out in the briefing, as a matter of how ordinary humans talk, those things aren't different. For example, if I want to make sure that my daughter brings the dog with her whenever she goes to the park, I can tell her that command in two different ways that has the exact same outcome. I could say, you can't go to the park unless you take the dog with you, or if you go to the park, you have to take the dog with you. In either circumstance, she doesn't have to go to the park. But if she does go to the park, she has to bring the dog. And she knows that if I get to the park and she doesn't have the dog with her, that she's violated the rule and she's in trouble. The same is true here. Texas did not have to grant in-state tuition to unlawfully present aliens. That was a legislative choice that they made. But having made that choice under Section 1623, they cannot now simultaneously deny in-state tuition to United States citizens on the basis of residence. It doesn't matter how the conditional was framed. And it's important to point out that opposing counsel doesn't point to a single case, not one where the meaning of a statute has turned on this artificial distinction between not unless conditionals and if-then conditionals, because the distinction simply isn't there. Now, it's important to point out in response to something that was said here, the district court did not order in this case, and we did not request that there be a mandate for in-state tuition for my clients. We asked to enjoin a statute that forbids my clients from receiving in-state tuition. It makes it impossible for my clients to receive in-state tuition because it requires that they be charged a higher rate. So you don't have to read 1623 to mandate the receipt of in-state tuition. You just have to say that by not receiving in-state tuition, there's a conflict, and that conflict injures my clients. That's a straightforward ex parte young claim. So you're perfectly happy then if the result is that both illegal aliens and your clients receive the benefit of in-state tuition? Under the statute, that's the way that we read it. Now, the legislature can choose to fix that. My question was, you're perfectly content with that circumstance if that were to obtain at the end of this litigation? That's right, Your Honor. They continue to have in-state tuition because that's what the Texas legislature chose, but if the Texas legislature is going to have that cake, it can't eat it, too. It has to also give our clients in-state tuition, which is the relief that we've requested in this case because it cost my clients approximately $12,000 more a semester than what federal law would allow. Now, I'd like to go on to the other argument that was raised in this case about the thrust of the federal statute. It's obvious what Congress was interested in, which is what kind of benefits illegal aliens either get or don't get. Congress wasn't really directing its attention to whether any of the 50 states grant or deny out-of-state tuition benefits. Your Honor, that's right to a degree. I think that the purpose of the statute was to discourage states from granting these benefits, but the mechanism chosen by the text of the statute is to create what, in effect, is sort of a penalty for if you choose to do this. If states choose to grant these benefits, they lose the ability to charge United States citizens out-of-state tuition, which, as the amici point out in this case, is a significant source of income for the university. So Congress said states, in sort of a nod to federalism, you can continue to provide these benefits if you want. However, you have to adopt a law after 1996 affirmatively saying that you're choosing to do this, and if you do that, then you lose the ability to charge out-of-state tuition. Texas made that decision. Texas said we're going to provide these benefits to unlawfully present aliens, and because it did that, it can't simultaneously charge my students $12,000 more in tuition. Are you challenging the wrong statute? I mean, I hear the government saying that, effectively, this is the statute that sets the differential, but why aren't you charging the one that actually violates 1623? The violation of 1623 occurs because my clients are being charged a higher rate than unlawfully present aliens, and that's the statute that we challenge because that's the statute under Article III that causes our injuries. Once that statute's enjoined, we no longer have those injuries in this case because that's the statute that provides the barrier to my clients receiving in-state tuition. And again, the deposition testimony in this case was clear that they are required to comply with that statute. They're required to charge my clients out-of-state tuition, and both Smatresk and Goodman, the named defendants in this case, said they have no discretion to depart from it. So that's the barrier to my clients receiving relief, so that's the thing that we challenged in this case. Typically, this court doesn't require plaintiffs to challenge the entirety of a statutory scheme. Indeed, that would raise severability arguments and a whole host of other arguments about Article III. In fact, we simply challenged the very statute that causes my clients injuries and sought to have it enjoined. Just like in Ex parte Young, they challenged the rate-setting statute, the statute that set the rate in that case, and asked for that statute, for that portion of the statute to be enjoined, that unlawful rate to be enjoined. They didn't seek in Ex parte Young to strike down the entire scheme. So your position is, in a nutshell, Texas can do one thing or the other, but not both. Right. And you can either get the benefit that illegal residents are getting, or they can't get the benefit of in-state tuition. They have to be treated like you're out-of-state students. The difference, I would say, Your Honor, is really an Article III question, right? Because this court is bound by the four corners of the complaint and what was pled here. Well, yes, but I'm just saying, generally speaking, and you chose to proceed along, I guess, option A, we get the same in-state tuition as they get, as long as the Texas legislature has made that policy choice. Right, because that's the statute. Because Texas made that choice, that's the statute that actually causes our injuries. It's important to point out, as opposing counsel said, under Day v. Bond, where they plead elsewhere in the brief, our clients would not have standing to seek to remove in-state tuition from unlawfully present aliens. Because in Day v. Bond, as they pointed out, that would effectively be a taxpayer-standing lawsuit. That indirectly, because unlawfully present aliens are receiving lower rates, that raises the rates for everyone else. And according to Day v. Bond, which they argue in this case, our clients would not have standing. So what they're arguing here is not just that our clients don't have standing, but that effectively no one would have standing to challenge this ongoing violation of federal law. That would undermine the purpose and structure of Section 1623, and this Court should not read federal statutes to effectively do nothing unless that reading is mandated by the text. And again, to come back to their only basis for saying that the text is limited in such a way is this artificial distinction between not unless statements and if-then statements, and we simply don't read the statute that way. But what about the argument that your clients have an economic injury? They chose to pay out-of-state tuition. They don't have to go to Texas. They're not from Texas. They can go to if they live in Mississippi, go to Mississippi. So it just seems like there's a big leap here between what they initially agreed to and what you're trying to confect at this point. I think that if you look at the case law that they cite on the self-inflicted harm point, none of the cases would take self-inflicted harm that far. Indeed, if you take self-inflicted harm that far, it would undermine virtually every civil rights litigation, every civil rights case that challenged discriminatory actions at universities that were already in effect at the time that the person enrolled in that university. You know, when Mr. Sweatt tried to enroll in the University of Texas, that program was already in place that segregated the university. It wasn't a self-inflicted harm and therefore eliminating a standing in order to go into that and then challenge that pre-existing policy. Their argument here with regard to self-inflicted harm, simply don't cite a single case that you can read for that proposition because it would undermine virtually all of constitutional litigation to say that whenever you go in and seek redress from an unconstitutional pre-existing policy that your harms are self-inflicted. But they didn't think it was unconstitutional when they signed up because this new provision wasn't giving in-state tuition to illegal aliens. This is a new development after they had already agreed to go there. No, Your Honor. This statute has been on the books for years. So whenever my clients enrolled at the University of North Texas, this statute was already on the books. 1623 was already on the books. The grant of in-state tuition to unlawfully present aliens was already on the books. And so the denial of in-state tuition to United States citizens was already unconstitutional when my clients enrolled. And it's unconstitutional today. And but for the injunction, they would be injured by this unconstitutional statute. And I think it's important to remember that in every other case where you have these sorts of dollars and cents injuries, here we're talking about $12,000 per semester. This court has assumed that there's Article III standing in the case. This is a straightforward issue of standing. I'd like to go to the last point, which is the availability of injunctive relief. As opposing counsel recognized, there is a conflict with federal law and state law in this case. And because the federal law conflicts with state law, the state law is preempted under the Supremacy Clause and therefore unconstitutional. The government argues that despite this unconstitutionality, that this court effectively has to leave that law on the books. The law continues to remain in force. And according to the brief, the reason for this, the reason they claim that the district court abused its discretion by enjoining an unconstitutional statute is because it will cost the government money. There is not a single case that they cite, not one, where this court or any other court is held to the injunction, not a temporary injunction, but a permanent injunction after a full merits determination that a law was unconstitutional, that that was an abuse of discretion simply because the government will lose money. And that's because abiding by the Constitution often costs the government money. In takings cases, that often costs the government money to comply with the Constitution. If this was an Eighth Amendment case and there was the injunction of an unconstitutional fine, that would mean that less money goes into government coffers. But that doesn't mean that the government gets to keep the law on the books. Now what they've asked here is this court to effectively potentially take a blue pencil to the statute to grant relief that wasn't requested by effectively rewriting Texas's tuition statutes to perhaps define residency differently. It seems to me that you're the one that's asking the courts to rewrite the federal statute to impose on the states the obligation to grant in-state tuition to out-of-state citizens. To be clear, Your Honor, we did not request an injunction mandating that our clients receive in-state tuition. We asked for an injunction to enjoin the law that prevents my clients from receiving in-state tuition, because as long as that law is on the books, 54051d, there is a conflict between 1623 and state law. Now that is a Village of Arlington Heights situation, right? You don't have to mandate that we receive the public benefit. We only have to mandate that we remove an unlawful barrier to my clients receiving the public benefit. And that's exactly what we've requested in this case, because for redressability to make sense, you don't, the court doesn't have to resolve every problem. In Village of Arlington Heights, the court was clear that the removal of an unlawful barrier to receiving a public benefit is sufficient to establish Article III standing, and that's exactly what the court did in this case. They repeatedly claimed that the injunction mandates that they provide in-state tuition. That's not true. The injunction enjoins the statute, 54051d, that makes it impossible for my clients to receive in-state tuition. And that's the same approach to standing that you see in cases like Village of Arlington Heights. What they would ask this court to do would be to either dismiss this case because they don't think it's properly pled, or to take a blue pencil to text the statute and say, well, we think you need to redefine how you do residency. Or maybe you need to, you know, not grant in-state tuition to lawfully present aliens, even though that claim is not at issue in this case. We're asking this court for the straightforward relief that has been provided by district courts for years, which is to enjoin the statute, which injures my clients, and therefore let the Texas legislature make the decision for itself on how it would like to comply with Section 1623. To enjoin the entire statute as though it had never existed? 54051d, yes. That is what we've requested in this case. And at the end of the day, I think that that is sort of the broad theme that I think runs through most of the arguments that they've put forward here, is that even if Section 54051d is preempted, they argue that there's really nothing that my that perhaps the Texas Attorney General might be able to do something about it. Except we don't have a unique system like in Arizona, where you had a rogue community college who is not, in fact, the state who is acting outside of state law. Here, this is a state entity. The Texas Attorney General is not going to sue the state of Texas to declare unconstitutional a state of Texas statute. That's not on the table here. If their reading of this statute is correct, then neither my clients nor anyone else has the authority to remedy this violation. Now, they pointed again to perhaps the Secretary of Immigration, because the Secretary of Immigration, of course, has authority to take action on any immigration statute vaguely in another section of the United States Code. But the district court addressed this in response to the motion to dismiss, relying on the Armstrong case. This is not the type of law where you have an enforcement mechanism that's built into Section 1623, where they say the way that this is resolved is through the Secretary. This is just a statute that says it's unlawful for states to do these two things at the same time. And we seek to stop that violation of federal law because it injures my clients. Again, my question will suggest a result that you and your clients wouldn't like, but let me ask you whether it's plausible. Would it be possible for us to say that you have standing and that the state statute is unconstitutional, but that because of the way the federal statute is worded, you get no relief? I mean, that would be, um, that would be an interesting scenario where, well, no, because if we don't get relief, Your Honor, then we wouldn't have standing. That would be, that's the problem. If there's no... Lots of plaintiffs have standing to bring a suit and they ultimately end up with no relief. That happens every day. Right, but if you were to declare, for example, that the only remedy available under 1623 is the removal of in-state tuition from unlawfully present aliens, which, again, we don't think is a valid reading of the statute because it's based on this artificial distinction between conditional statements, but if you were to conclude that, then there's a real redressability problem, unless you were going to say that it's simply inseverable and you have to strike down the entire Texas tuition statute and basically tell the legislature to go at it again, which potentially would be a situation where there is no Texas tuition statute, but that would be a pretty strong holding by the court that, in fact, these things are inseverable because the statutory scheme is put together as a whole and therefore the entire thing has to fall as one. It would be, I can't foresee a way within Article 3 to hold that, in fact, we're injured sufficient for standing, but there's no redressability because the remedy is something other than what we've sought in this case. But again, that's not what they argue for in this case. What they're arguing for in this case is that effectively the law must remain on the books and the law must remain on the books and no one can sue over it because it costs the government money, which is a really indefensible position. They don't cite a single case for it and that's with good reason because not only would it be contrary to the text of Section 1623, but it would be contrary to the separation of powers and the rule of law to have such a holding from this court. And with that, Your Honors, unless you have any further questions, we would ask that the District Court judgment in this case be affirmed. Thank you. Thank you, Mr. Weldon. Mr. Jefferson. Thank you, Your Honor. Just very briefly, we do think Day v. Bond answers the question here. We know that this is not a case that you have to follow. The Court may disagree with it, but I think the analytical analysis of Section 1623 in Day v. Bond and in the Arizona Supreme Court case is correct. Second, Judge Smith, I think you are right that Congress in the immigration statute did not say or intend to become the oversight of state educational tuition policies. That's not the immigration statute was all about. It was a statute that said if you do this, you must retract benefits to aliens because it's not fair in Congress's view for an alien to get a benefit that a citizen, no matter what state they're in, does not also receive. So you must retract it. That's what Congress is getting at. That's why it's called an immigration statute. That's why the title of it is restricting benefits. Judge Clement, they did show. Yes, Your Honor. Requires someone, if there is such a person, withstanding to bring a challenge to conferring the benefit on illegal aliens. Yes, I think there are two ways to answer that. Number one is yes, and the Texas Attorney General quite frequently files suits against the state of Texas statutes that it believes is unconstitutional or preempted. There is no reticence on the Texas Attorney General's part to do that sort of thing. The Homeland Security Secretary, under a specific statutory provision that I quoted, has the authority to enforce and administer the immigration statutes. So certainly that could be done in an enforcement action in the state of Texas. Third, if they are correct that this is an anomalous policy that the state has after 1623 was adopted, there are legislative answers to this. This is, in effect, a political animal. It was curious to me that a Republican legislature and governor would have a policy that it enacted in 54052, but it did, and that is a political question that can go. So I think that is the answer. I mean, there are ways. I think you're right. They did choose, and this is going on all over the country. We have amicus briefs from the President's Alliance that shows the history of the different tuition rates. We're taxpayers in Texas. Our kids pay, through us, taxes. They should get the benefit of that in-state tuition, and it funds scholarships, and it funds reduction in expenses for in-state schools. We do it. Michigan does it. Massachusetts. This is the way the financing happens in Texas. Judge Smith, I think in the end your question, the last question, is I think appropriate. It might be that an opinion could say the simultaneous statute that provides for eligibility of aliens compared to what 1623 says is anomalous. This doesn't make sense. I think people can come to that conclusion. We haven't briefed it because they haven't brought the alien eligibility statute, and so there might be a lot of complications, but I think you could say that they do not have the right to bring it. They versus Bond, I think, makes that point very clearly. If there was to be preemption under the analysis of the District Court, it would have been to the alien eligibility statute, which is not at issue here. The statute 1623 itself doesn't reach and doesn't address in-state tuition for out-of-state residents in this context in 1623, so we believe that the District Court judgment should be reversed. The injunction should be vacated, and the case should be dismissed. Unless there are further questions, I'll give back the rest of my time. All right. Thank you, Mr. Jefferson. Your case is under submission. Last case for today.